# No. 22-1015

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

JUAN ROMAN,

Plaintiff-Appellee

v.

UNITED STATES,

Defendant-Appellant

ON APPEAL FROM THE JUDGMENT OF THE
UNITED STATES COURT OF FEDERAL CLAIMS
No. 20-40 T; SENIOR JUDGE BOHDAN A. FUTEY

## OPENING BRIEF FOR THE UNITED STATES

DAVID A. HUBBERT
*Deputy Assistant Attorney General*

JOAN I. OPPENHEIMER (202) 514-2954
BETHANY B. HAUSER (202) 514-2830
*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

January 24, 2022

# TABLE OF CONTENTS

**Page**

Table of contents ..... i
Table of authorities ..... iii
Statement of related cases ..... vi
Glossary ..... vii
Jurisdictional statement ..... viii
Statement of the issues ..... 1
Statement of the case ..... 2

A. Procedural history ..... 2

B. The underlying facts ..... 2

1. The divorce and the property settlement ..... 3

2. The tax consequences ..... 5

3. Roman's refund claim ..... 8

4. The IRS's consideration of the refund claim ..... 10

5. CFC proceedings ..... 11

Summary of argument ..... 16

Argument:

I. Standard of review ..... 19

II. The CFC erred in holding that Roman was a "taxpayer" who could sue to recover taxes he paid on behalf of another, pursuant to a private agreement undertaken in exchange for value ..... 19

**Page**


A. Under Court of Claims precedent, Roman could not bring this suit because he was not liable for the tax ..... 19

B. A private, contractual obligation to pay another's taxes does not make the payor a taxpayer ..... 22

C. Roman cannot establish an independent jurisdictional basis resulting from alleged IRS duress ..... 26

D. The Supreme Court decision in *Williams* does not provide a jurisdictional basis for Roman's refund suit with respect to the taxes he paid on behalf of his ex-wife ..... 30

E. As a volunteer, Roman may not to sue to recover taxes paid on behalf of another ..... 34

III. The CFC also erred in ordering a refund without permitting the United States to respond to the complaint and litigate the merits and in ordering a refund of monies paid more than two years before the administrative refund claim was filed ..... 38

Conclusion ..... 40

Addendum ..... 41

Judgment of the Court of Federal Claims ..... Appx1

Opinion of the Court of Federal Claims ..... Appx2

Certificate of service ..... 42

Certificate of compliance ..... 43

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Central Aguirre Sugar Co. v. United States*,
2 F. Supp. 538 (Ct. Cl. 1933)....................37-38
*City of Richmond v. United States*,
348 F. Supp. 2d 807 (E.D. Ky. 2004)....................34
*Collins v. United States*,
532 F.2d 1344 (Ct. Cl. 1976)....................15, 17, 21, 23, 26-29
*Document Mgmt. Grp. v. United States*,
11 Cl. Ct. 463 (1987)....................21
*Dominion Tr. Co. of Tennessee v. United States*,
Nos. 92-5436, 92-5446,
1993 WL 410406 (6th Cir. Oct. 14, 1993)....................24
*EC Term of Years Trust v. United States*,
550 U.S. 429 (2007)....................31-32
*Econ. Plumbing & Heating Co. v. United States*,
470 F.2d 585 (Ct. Cl. 1972)....................21-23
*Four Rivers Investments, Inc. v. United States*,
77 Fed. Cl. 592 (2007), *aff'd without op.*,
330 F. App'x. 919 (Fed. Cir. 2009)....................34
*Munaco v. United States*,
522 F.3d 651 (6th Cir. 2008)....................34
*OPM v. Richmond*,
496 U.S. 414 (1990)....................29
*Petro-Hunt, L.L.C. v. United States*,
862 F.3d 1370 (Fed. Cir. 2017)....................19
*Philadelphia v. Collector*,
5 Wall. 720 (1867)....................35
*Robinson v. United States*,
95 Fed. Cl. 480 (2011)....................21
*South Corp. v. United States*,
690 F.2d 1368 (Fed. Cir. 1982)....................21
*Stahmann v. Vidal*,
305 U.S. 61 (1938)....................35-36

**Cases (cont'd):** **Page(s)**

*United States v. Campbell (In re Campbell)*,
761 F.2d 1181 (6th Cir. 1985) .......... 24
*United States v. Clintwood Elkhorn Min. Co.*,
553 U.S. 1 (2008) .......... 39
*United States v. Cowles-Reed*,
584 F. App'x 500 (9th Cir. 2014) .......... 24
*United States v. Juan Roman*,
645 F. App'x. 922 (11th Cir. 2016) .......... 8
*United States v. Williams*,
514 U.S. 527 (1995) .......... 12-15, 18, 30-36
*Zinsmaster Baking Co. v. Commissioner*,
109 F.2d 738 (8th Cir. 1940) .......... 36-37

**Statutes:**

Internal Revenue Code (26 U.S.C.):
§ 72 .......... 3
§ 121 .......... 13
§ 408 .......... 3
§ 1041 .......... 3
§ 6013 .......... 25
§ 6321 .......... 28
§ 6325 .......... 14, 33
§ 6511 .......... 10, 16, 20, 38, 39
§ 7422 .......... 20-21, 39
§ 7426 .......... 14, 32, 33
§ 7701 .......... 15, 20-21, 23

IRS Restructuring and Reform Act of 1998,
Pub. L. No. 105-206, 112 Stat. 685, § 3106 .......... 33

28 U.S.C.:
§ 1295 .......... viii
§ 1346 .......... 11, 20, 30-34
§ 1491 .......... 19, 26, 39

**Miscellaneous:** **Page(s)**

Fed. R. App. P. 4(a)(1)(B)(i) .......... viii

RCFC 12(a)(4)(A) .......... 39

Rev. Rul. 2005-50, 2005-2 C.B. 124 .......... 34

S. Rep. No. 105-174, 2d Sess. (1998) .......... 33

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. Rule 47.5, counsel for the United States state that to the best of our knowledge there are no prior appeals in this case, and no pending related appeals.

## GLOSSARY

| *Acronym* | *Definition* |
|---|---|
| CFC | Court of Federal Claims |
| IRA | Individual Retirement Account |
| IRS | Internal Revenue Service |



15256058.1

## JURISDICTIONAL STATEMENT

Juan Roman sued to recover approximately $50,000 paid by him to the IRS on behalf of his ex-wife. (Appx18.)[1] Roman also sought a refund on his own behalf and damages. (Appx54.)

The United States moved to dismiss the complaint for lack of jurisdiction. (Appx118.) The Court of Federal Claims ("CFC") agreed with respect to all claims except Roman's third-party refund claim. (Appx13.) On that claim, the court held that it had jurisdiction and determined *sua sponte* and before the government filed an answer that Roman was entitled to a refund of $50,002.04. (Appx10, Appx13.) Judgment consistent with the opinion was entered on August 2, 2021. (Appx1.) As discussed *infra*, it is the Government's position that the CFC lacked jurisdiction over the entire case.

On September 30, 2021, the United States appealed from the judgment of the CFC. (Appx248.) The appeal was timely under Fed. R. App. P. 4(a)(1)(B)(i). Roman did not file a cross-appeal with respect to the dismissed claims. This Court has jurisdiction to review the judgment of the CFC. 28 U.S.C. § 1295(a)(3).

---

[1] "Appx" references are to the separately bound record appendix.

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**No. 22-1015**

**JUAN ROMAN,**

**Plaintiff-Appellee**

**v.**

**UNITED STATES,**

**Defendant-Appellant**

---

**ON APPEAL FROM THE JUDGMENT OF THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**
**No. 20-40 T; SENIOR JUDGE BOHDAN H. FUTEY**

---

**OPENING BRIEF FOR THE UNITED STATES**

---

## STATEMENT OF THE ISSUES

1. Whether the Court of Federal Claims ("CFC") erred in upholding its jurisdiction over a tax refund suit brought by a person other than the one liable for the tax.

2. Whether the CFC erred in *sua sponte* determining that Roman was entitled to a refund and in determining the amount of the refund, after denying the Government's motion to dismiss for lack of

jurisdiction and before the Government had joined issue and conducted any litigation on the merits of the refund.

## STATEMENT OF THE CASE

### A. Procedural history

Roman brought this suit to recover tax reported by and attributable to his ex-wife, Iris Gabriela Espinosa, but paid by him in accordance with the terms of the property settlement agreement incorporated into their divorce decree. (Appx18.) The United States moved to dismiss for lack of jurisdiction. (Appx15.) The court denied the motion. (Appx2-13.) In the same opinion, and without permitting the United States to answer the complaint, the court ordered the United States to pay Roman $50,002.04. (Appx13.) Judgment consistent with the opinion was entered the same day. (Appx1.) The ex-wife whose tax liability is at issue is not a party to the case.

### B. The underlying facts

Because of the unusual procedural history of this case, the facts of this case have not been developed. As presented by Roman in his complaint, in the documents attached thereto, and in his response to the Government's motion to dismiss, the facts of this case are as follows.

### 1. The divorce and the property settlement

On December 18, 2009, in connection with their divorce, Roman promised to pay Espinosa $150,000 in exchange for her interest in their marital home. (Appx47, Appx60-65.) She quitclaimed her interest to him on December 22. (Appx47, Appx113.) The deed was duly recorded in January 2010. (Appx115.)

At that time, Roman appears to have had substantial savings in his IRA, but he was still under the age of 59.5 (Appx95), so any withdrawal was subject not only to tax as ordinary income, I.R.C. § 408(d), but also to the additional tax on early withdrawals, I.R.C. § 72(t). As part of a divorce, one spouse's IRA, or a portion of that IRA, may be transferred tax free to the other spouse's IRA. *See* I.R.C. §§ 408(d)(6), 1041(a). But such a transfer does not permit divorcing spouses to escape the tax on withdrawals. Any funds transferred from one spouse's IRA to an IRA in the name of the other spouse will, upon withdrawal, still be subject to tax as ordinary income (and, depending on the age of the second spouse, the early-withdrawal tax). I.R.C. §§ 72(t), 408(d).

Roman has said that, to pay his ex-wife the $150,000 he owed her, he "transferred" the funds "from my IRA to my ex-wife's checking account." (Appx47.) Such a distribution directly from *his* IRA to her checking account would have represented ordinary income to *him*. Had he transferred the $150,000 to an IRA in her name, however, and the funds were distributed to her, the ordinary income would have been attributable to *her*. In addition to shifting the incidence of the tax, this maneuver would also have reduced the overall tax if, as seems to be the case, Roman's ex-wife had a lower marginal tax rate than he did. (*See* Appx71, Appx95.)

From the documents attached to his complaint, it appears that Roman elected to shift this tax to his ex-wife in this manner. His 2010 tax return shows IRA distributions of nearly $400,000, but treats only $166,044 as taxable income (Appx95), which is consistent with a tax-free transfer of $150,000 to his ex-wife's IRA account. He has also included a 2010 Retirement Account Information Statement from Invest Financial Corporation regarding a contribution to a $150,000 Rollover IRA in his ex-wife's name. (Appx70.) This statement also shows a gross

distribution in 2010 of $149,952.10, with the whole amount treated as taxable income. (Appx70.)

But if Roman had decided to shift the federal income tax liability to his ex-wife, she responded by shifting the ultimate incidence of that tax back to him. Apparently anticipating Roman's gambit, in January 2010, Roman's ex-wife secured an amendment to the property settlement agreement in which Roman agreed that it was his "intention . . . that [his ex-wife] shall net $150,000.00" and that "[a]ny taxes or penalties against said $150,000.00 shall be paid by [Roman] immediately upon demand by [his ex-wife]." (Appx66.)

### 2. The tax consequences

Roman's ex-wife evidently reported her 2010 federal income taxes consistently with the statement sent to her by Invest. Her 2010 return is not in the record, but a related stub included by Roman with his complaint shows total income of $149,952, with no payments, and a total tax of $44,080. (Appx71.) According to the stub, the resulting balance due, including an estimated tax penalty, was $45,025. (Appx71.)

The IRS apparently assessed the tax based on Espinosa's return. On August 2, 2011, the IRS sent to Espinosa a "notice of intent to levy." (Appx76.) The notice states that "[i]f you don't call us immediately or pay the amount due by August 18, 2011, we may seize ('levy') any state tax refund to which you're entitled and apply it to the $50,002.04 you owe," and "[i]f you still have an outstanding balance after we seize any state tax refund, we may take possession of your other property or your rights to property." (Appx76.)

On or after August 8, 2011, Espinosa confronted Roman with this notice and demanded that he pay it. (Appx26.) He questioned whether he was truly obliged to pay the tax, but Espinosa's accountant son said that he was. (Appx26.) Roman and his ex-wife "then went back to the lawyer who represented us," *i.e.*, their divorce attorney, and Roman "explained what was going on and protested against paying." (Appx27.) The lawyer "said that was between me and my wife and that we had to make the decision, but I had to pay based on my divorce settlement." (Appx27.)

At this time, Roman had just responded to a similar notice from the IRS about his own 2010 account. (Appx80.) Roman's notice stated

that the amount he owed was $37,983.43, and that the payment was due by August 11, 2011. (Appx80.) Roman's own underpayment, like his ex-wife's, appears to have been reported by him on his own self-prepared return. (Appx103.)

On August 8, 2011, Roman "went to the I.R.S. office in downtown Miami" and paid $12,990.43 toward the amount due on his own account. (Appx49, Appx79.) This brought the balance under $25,000, making him eligible for an installment agreement, which he entered into. (Appx49.) According to IRS records, he paid $417.00 toward his own liability each month thereafter (Appx156-162) until the developments recounted below.

Ten days later, on August 18, 2011, Roman paid $25,010 toward the amount due on his ex-wife's account, bringing the balance on that account under $25,000 ($50,002.04 minus $25,010 equals $24,992.04) and making his ex-wife eligible for an installment agreement. (Appx28, Appx73.) The IRS's customer service representative Maria Suescun prepared an installment agreement for Roman's ex-wife, and in September 2011 Roman made the first $417.00 payment toward the agreement. (Appx28, Appx74, Appx77.) A note on the installment

agreement states that "TP [taxpayer] ex-spouse with POA [power of attorney] made a payment for $25,010.00 today bringing bal[ance] due to under $25,000 to request Streamline IA [installment agreement]." (Appx74.)

Roman did not sign the installment agreement (Appx74), but he paid $417.00 toward his ex-wife's account each month thereafter until the developments recounted below. Those checks that are in the record are apparently drawn on his own checking account, but with his ex-wife's name and social security number written on the face of the check. (Appx73, Appx77.)

#### 3. Roman's refund claim

In July 2014, Roman paid the outstanding balance on his own account ($6,532.14). (Appx49, Appx82-86.) He could not do the same for Espinosa's account, he explained, because the IRS sent the statements for that account to Espinosa herself, and Espinosa, who had shared at least the first statement showing an installment payment with Roman (Appx78), was no longer communicating with Roman. (Appx49.) In August 2014, Roman "was arrested and sent to prison." (Appx49.) *See United States v. Juan Roman*, 645 F. App'x. 922 (11th

Cir. 2016). Nevertheless, Roman continued making monthly payments toward his ex-wife's account. (Appx49.)

In May 2018, Roman filed an administrative refund claim on his own 2010 account, using a Form 1040X identifying himself as the taxpayer and using his social security number. (Appx93-94.) He identified the $50,000 as an "overpayment to" his ex-wife's social security number. (Appx93.) He explained that he had "agreed to pay taxes on the $150,000, which came out to over $50,000, for a total amount of $200,000," because "our lawyer did not advise[ ] me that I didn't have to pay taxes on the $150,000." (Appx94.) The Form 1040X does not mention Roman's IRA as the source of the $150,000 and does not discuss his August 18, 2011 meeting with the IRS. (Appx94.)

In a separate document also prepared in the spring of 2018, Roman elaborated on his legal theory that the $150,000 he had paid his ex-wife was exempt from capital gains tax because it was paid in exchange for her interest in her home. (Appx90-91.) He did not, however, address the taxability of distributions from an IRA to a checking account. (Appx88-92.)

### 4. The IRS's consideration of the refund claim

The IRS denied Roman's refund claim on August 17, 2018. (Appx105.) The letter denying the claim explained that the claim was untimely, because a refund claim must be filed within three years of the date the return was due, or within two years of the date of payment, and Roman's claim was not filed within this period. (Appx105.) As noted above, Roman's refund claim identified Roman himself as the taxpayer. (Appx93.) He had filed his claim about seven years after filing his 2010 return and about four years after paying off the balance on that account (Appx86).

Roman sought administrative review with the IRS Office of Appeals. By letter of March 5, 2019, that office indicated that it had "completed [its] review of your denied claim" and, "[b]ased on the evidence," found "no basis to allow it." (Appx107.) This letter added that I.R.C. § 6511(b) limits refund claims to payments made within the two-year lookback period, *i.e.,* to the portion of the tax paid during the 2 years immediately preceding the filing of the claim. (Appx107.)

On March 25, 2019, Roman hired a tax attorney to assist him with his appeal. (Appx109.) The attorney represented him before IRS

Appeals where, according to Roman's account, "[m]y lawyer stated, that they both agreed that I did not and should not have paid the $50,000 in taxes to the IRS on my ex-wife[']s account and that I should now STOP PAYMENT immediately of the $417.00 a month." (Appx51.) Roman had sent a monthly check to his ex-wife's account on March 4, 2019. (Appx110.) That was his last check. (Appx51, Appx110.) By Roman's account, he paid a total of $63,052 toward taxpayer's 2010 account. (Appx19, Appx29.)

By letter of April 16, 2019, the IRS Appeals Office denied Roman's refund claim on the ground that "[t]he information you submitted provided no basis to allow any part of your claim." (Appx111.)

**5. CFC proceedings**

Plaintiff then commenced this action and sought a refund of $63,052, consisting of full payment of Espinosa's alleged $50,002.04 tax liability, plus an overpayment of $13,049.96. (Appx53-54.) He asserted that even though he was not the assessed taxpayer, he had standing to contest Espinosa's tax liability under 28 U.S.C. § 1346(a)(1) because the IRS had collected it from him. (Appx19.)

In addition, he alleged that *United States v. Williams*, 514 U.S. 527 (1995), gave him standing to contest a third-party tax liability because an IRS officer told him that he had to pay Espinosa's tax liability to stop a lien against his home. (Appx23.) According to the complaint, Roman "went to the downtown I.R.S. main office to speak with an I.R.S. agent to see if indeed I was responsible to pay for my wife's $50,000 taxes." (Appx27.) Roman allegedly explained to Maria Suescon, the IRS customer service representative, "that I had given my wife $150,000 for exchange of the deed for her interest in our home and that I should not have to pay her $50,000.00 taxes and I protested doing so." (Appx27.) He "asked her if she could get a supervisor and ask for confirmation because I did not think it was fair and that maybe a supervisor would agree that I was not obligated to pay that tax." (Appx27.) According to Roman, the customer service representative "left and spoke to someone and came back saying that I was required to pay that tax for my wife." (Appx27.) Roman then said that he "would pay it under protest . . . ."[2] (Appx27.)

---

[2] After the Government moved to dismiss the case for lack of jurisdiction, Roman offered a different account of his meeting on August
(continued…)

In addition to seeking a refund of the taxes he paid on behalf of Espinosa, Roman also sought a refund of his personal tax liability for the additional tax assessed on his early IRA distribution of $32,157, which was allegedly withdrawn to pay Espinosa's taxes. (Appx54.) He also asserted claims of unauthorized IRS collection action, tort, contract, criminal misconduct, and due process violations. (Appx54-56.)

The Government filed a motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim. (Appx.118.) It asserted four grounds for moving to dismiss for lack of jurisdiction. First, it argued that the complaint's basis for relief — the *Williams* case — substantially varied from the ground — I.R.C. § 121 — raised in the refund claim. (Appx135.) Second, the Government argued that *Williams* is no longer available for a third-party challenge of an allegedly wrongful tax lien because Congress has since provided a

---

18, 2011, at the IRS office in Miami. He now claimed, as he had not before, that Espinosa had accompanied him to the IRS office. (Appx27-28, Appx188.) He allegedly "informed" the customer service representative "that [Espinosa] had no property rights or interest in the Biscayne Park Residence." (Appx188.) This time, he claimed that when the customer service representative returned from speaking to other employees, "she purported [*sic*] that the tax was properly assessed, that the Biscayne Park Residence had a LIEN attached and that it would be subject to a levy if the taxes were not paid." (Appx188.)

statutory remedy — I.R.C. §§ 6325(b)(4), 7426(a)(4)). (Appx137.) Third, I.R.C. § 7426(a)(1) provides the exclusive remedy for third parties to contest a wrongful lien in federal district court. (Appx14.) Finally, the Government argued that Roman could not maintain a third-party refund suit because third parties cannot contest the substantive tax liability of another; plaintiff, as a "volunteer," cannot maintain a tax refund suit. (Appx142.)

In an unreported opinion, the CFC concluded that it lacked jurisdiction over Roman's claims for a refund of his own income taxes because the administrative claim was untimely. (Appx11.) The court also denied Roman's various claims for damages. (Appx11-13.)

But the court upheld its jurisdiction over Roman's refund claim for the tax he paid to satisfy his ex-wife's tax liability. (Appx9-10.) It rejected Roman's principal argument that under the Supreme Court's decision in *Williams*, *supra*, he could sue to contest a third-party tax liability. (Appx9-10.) *Williams* held that a person who received property without notice of a federal tax lien on the property, who agreed to pay the taxes under protest to convey clear title, and who had no other remedy could sue for a refund. *See* 514 U.S. at 531-40. The CFC

held that unlike the plaintiff in *Williams*, Roman "cannot be considered a third-party properly challenging an allegedly wrongful tax lien because the IRS did not actually place a lien on *his* property to challenge." (Appx10; emphasis in original; footnote omitted.)

The CFC nevertheless upheld its jurisdiction over Roman's refund suit. In doing so, it first considered whether plaintiff was a "taxpayer." After quoting the statutory definition of "taxpayer" (I.R.C. § 7701(a)(14)), as "any person subject to any internal revenue tax," the CFC relied, *inter alia*, on *Collins v. United States*, 532 F.2d 1344, 1347 n.2 (Ct. Cl. 1976), which held that "[i]n order to maintain an action for the refund of taxes . . . , the plaintiff must be the taxpayer who has overpaid his own taxes." After observing that in *Collins*, there were no claims that the amounts paid were not actually due from the assessed taxpayer, the CFC stated that here "[p]laintiff *does* claim that the amount paid was not actually due; that is his basis for requesting a refund, not overpayment." (Appx10; emphasis in original.) The court concluded that "[p]laintiff is in the category of taxpayer." (Appx10).

Then, after noting that the Government's motion to dismiss did not address the underlying merits of the tax assessed against Espinosa,

the CFC in effect resolved the merits and entered judgment for Roman on his claim relating to Espinosa's taxes. (Appx10, Appx13.) The court did not actually address the merits; instead, it treated the case as if, by moving to dismiss for lack of jurisdiction, the Government had waived any argument on the merits. In addition, although the court had denied Roman's claim for a refund of his *own* taxes based on the time limit of I.R.C. § 6511(b), which permits a refund only of amounts paid in the two years prior to the refund claim, the court allowed a refund to Roman of payments of his ex-wife's taxes going back to 2011. The court entered judgment for Roman in the amount of $50,002.04. (Appx1.)

## SUMMARY OF ARGUMENT

The legal issue presented in this appeal is straightforward: may a person who voluntarily paid a tax assessed against someone else sue for a refund? The answer is no, with narrow exceptions not relevant here. Under Court of Claims precedent, only the person against whom a tax is assessed — the "taxpayer," defined by statute — may sue for a refund under the federal tax refund statutes. Roman is not the person against whom the tax here at issue is assessed, so he may not bring a tax refund suit.

To be sure, the Court of Claims has recognized an exception to this general rule if the Government does something to place the payor under duress. In that circumstance, the court has upheld its jurisdiction to order a refund under the implied contract clause of the Tucker Act. But the court has found that no implied-in-fact contract exists when the record was "completely devoid of any coercive actions by agents of the Internal Revenue Service" and contains "[a]t best . . . a misrepresentation of law by [the IRS agent]." *Collins v. United States*, 532 F.2d 1344, 1349 (Ct. Cl. 1976).

There was no duress here; Roman paid his ex-wife's taxes because he was obligated to do so under a property settlement agreement, not because of any coercive action by an IRS representative. Even assuming, as Roman contends, that an IRS customer service representative made a misrepresentation to him, the misrepresentation was immaterial, as Roman's private attorney had already counseled him to pay the tax. That is the fundamental problem with Roman's claim: he paid his ex-wife's tax not because of any action taken by the IRS, but because he had voluntarily entered a property

settlement agreement incorporated into his divorce decree, in which he agreed to pay his ex-wife's tax in exchange for value received.

Nor does *United States v. Williams*, 514 U.S. 527 (1995), provide a jurisdictional basis for Roman's suit to recover the taxes he paid on his ex-wife's behalf. *Williams*, in which the Court held that a taxpayer could bring a refund claim where she had paid her ex-husband's tax in order to remove a federal tax lien from her property, has been limited to its facts by later cases and has been abrogated by the enactment of a statute permitting a suit to contest a wrongful lien by a person in Williams's position.

Finally, even assuming the CFC had jurisdiction to hear Roman's refund claim, it should not have entered judgment against the United States in the current posture of this case. The United States did not concede the merits of Roman's argument that the tax was not correctly assessed and had not even filed an answer.

The CFC's judgment is erroneous. It should be vacated, and the case dismissed for lack of jurisdiction.

# ARGUMENT

## I

## Standard of review

The CFC's determination that it had jurisdiction to order a tax refund is an issue of law reviewed *de novo*. *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1378 (Fed. Cir. 2017).

## II

## The CFC erred in holding that Roman was a "taxpayer" who could sue to recover taxes he paid on behalf of another, pursuant to a private agreement undertaken in exchange for value

### A. Under Court of Claims precedent, Roman could not bring this suit because he was not liable for the tax

Jurisdiction in the Court of Federal Claims is broadly founded on the Tucker Act, 28 U.S.C. § 1491, which grants the court jurisdiction to "render judgment upon any claim against the United States founded . . . upon . . . any Act of Congress . . . or upon any express or implied contract with the United States."[3] 28 U.S.C. § 1491(a)(1). This

---

[3] 28 U.S.C. § 1491(a) provides in pertinent part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any

(continued…)

jurisdictional grant encompasses tax refund actions, as confirmed by 28 U.S.C. § 1346(a)(1), which provides that the "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of "civil action[s] against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected. . . ."

In addition, before bringing a refund suit, the plaintiff must, *inter alia*, file with the IRS an administrative claim for refund "according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." I.R.C. § 7422(a). This administrative refund claim must be filed "by the taxpayer" within a specified period. I.R.C. § 6511(a).

The Internal Revenue Code defines "taxpayer" as "any person subject to any internal revenue tax." I.R.C. § 7701(a)(14). The Court of Claims has interpreted "taxpayer" in a "strict or narrow sense . . . [as] mean[ing] a person who pays, overpays, or is subject to pay *his own*

---

Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

personal income tax." *Econ. Plumbing & Heating Co. v. United States*, 470 F.2d 585, 590 n.3 (Ct. Cl. 1972) (citing I.R.C. § 7701(a)(14)) (emphasis added).[4] In *Collins, supra,* the Court of Claims held that "[i]n order to maintain an action for the refund of taxes . . . , the plaintiff must be the taxpayer who has overpaid his own taxes." 532 F.2d at 1347 n.2. *See also Robinson v. United States*, 95 Fed. Cl. 480, 484 (2011) ("Third-parties who pay the tax liabilities of others are . . . not permitted to bring suit under I.R.C. § 7422."); *Document Mgmt. Grp. v. United States*, 11 Cl. Ct. 463, 465 (1987) (collecting cases holding that "third parties . . . are not 'taxpayers' and cannot avail themselves of I.R.C. § 7422(a) jurisdiction").

In its opinion, the CFC acknowledged this precedent as binding, citing *Collins* and *Economy Plumbing*. (Appx9-10.) And there is no dispute that the tax at issue is one for which Roman's ex-wife, not Roman, was liable under federal law. (*E.g.*, Appx47-48, Appx76.) The court nevertheless concluded that Roman was "in the category of taxpayer." (Appx10.) This conclusion is unprecedented in this circuit.

[4] It is settled in this Court that decisions of the Court of Claims are binding circuit precedent. *See South Corp. v. United States*, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982) (*en banc*).

Under circuit precedent, Roman may not sue for a refund because it was his ex-wife, and not he, who was liable for the tax he seeks to recover.

### B. A private, contractual obligation to pay another's taxes does not make the payor a taxpayer

*Economy Plumbing* does not support the court's holding that plaintiff was a "taxpayer" who had standing to bring a tax refund suit. Economy Plumbing & Heating Co. was part of a joint venture that had a government contract. Since part of the contract award was used to pay the other joint venturer's taxes, Economy filed suit, and a surety intervened as a third-party plaintiff. Plaintiffs belatedly urged that the suit was a refund suit in an attempt to convert a contract award, which provided no statutory interest, into a tax refund claim, which bears interest. The Court of Claims rejected this attempt because "plaintiffs are not taxpayers in this case with respect to these funds within the meaning of the revenue laws." 470 F.2d at 588. *See also id.* at 589 ("Our plaintiffs are not taxpayers and could not sue for a tax refund as a taxpayer could. All they could do was to sue to recover their property, which was the funds due them as an equitable adjustment under the contract . . . .")

The court explained that the term "taxpayer" in the Internal Revenue Code "means a person who pays, overpays, or is subject to pay his own personal income tax. (*See* Section 7701(a)(14) of the Internal Revenue Code of 1954)," and that "[a] 'nontaxpayer' is a person who does not possess the foregoing requisites of a taxpayer." *Id.* at 590 n.3. The court added that "a nontaxpayer is outside the administrative system set up for the collection of a refund of overpaid taxes . . . ." *Id.* at 589. Therefore, "[t]he payment of Lieb's taxes with the money due plaintiffs under the contract did not convert such contract funds into an overpayment of their taxes nor make taxpayers of the plaintiffs." *Id.* at 590.

The CFC attempted to distinguish the present case from *Collins* and *Economy Plumbing* on the ground that "there were no claims that the amounts paid were not actually due from the assessed taxpayers in either of those cases," while here "[p]laintiff *does* claim that the amount paid was not actually due . . . ." (Appx9; emphasis in original.) Therefore, the court concluded that "[p]laintiff is in the category of taxpayer." (*Id.*) The court erred in so holding. *Collins* and *Economy Plumbing* establish that one who pays the tax liability of another is not

a "taxpayer." They do not support the proposition that adding a claim that there was no tax due would transform a plaintiff's status from nontaxpayer to taxpayer.

Furthermore, other courts have held that a third party lacks standing to contest the tax assessments of another. *See, e.g., United States v. Cowles-Reed*, 584 F. App'x 500, 500 (9th Cir. 2014) ("[o]nly the estate itself, and not an interested third party, may contest the [estate's] tax assessment."); *United States v. Campbell (In re Campbell)*, 761 F.2d 1181, 1185 (6th Cir. 1985) (holding that the husband of a taxpayer "lacks standing" to challenge the liabilities of his wife); *Dominion Tr. Co. of Tennessee v. United State*s, Nos. 92-5436, 92-5446, 1993 WL 410406 at *9 (6th Cir. Oct. 14, 1993) ("[T]here is ample authority holding that one may not challenge another's tax liability, even if the third person stands to gain or loose [*sic*] by the eventual outcome.").

The court here seemed troubled by the fact that a spouse who is contractually obligated to pay his ex-spouse's taxes has no recourse if he overpays. But it has long been the case that divorce agreements regarding payment of taxes do not bind the IRS or alter the outcomes

dictated by the Internal Revenue Code. For example, it is common for a divorce settlement agreement to provide that one of the spouses will pay the couple's tax debt arising from past-filed joint returns. If that spouse does not pay, however, the IRS is free to collect from either spouse, because the joint return created joint and several liability under I.R.C. § 6013. Thus, the agreement has no effect on whom the IRS can collect from. In such cases, the parties' recourse is to seek to enforce the terms of their settlement agreement in state court: the Florida divorce court has specifically reserved jurisdiction to do so in Roman's and Espinosa's case (Appx69).

Of course, the fundamental problem Roman faces is that under the amendment to the property settlement agreement, only Espinosa was legally responsible for reporting the tax, and only she had standing to contest it, but only Roman was liable to pay the tax. It is foreseeable that this would lead to difficulties between people already in the process of divorce. But that difficulty was not created by the federal Government, which was not a party to the state divorce. If Roman believes that he was badly advised when he signed the amendment to

the property settlement agreement in 2010, his remedy is to sue his advisor, not the Government.

### C. Roman cannot establish an independent jurisdictional basis resulting from alleged IRS duress

Some of the cases — *Collins* and *Economy Plumbing* — hold that a party who pays a tax for which he is not liable may sue to recover that tax if it was paid under duress because the duress creates an "implied in fact contract." *See Collins*, 532 F.2d at 1347; 28 U.S.C. § 1491(a). In *Collins*, Collins sought a refund of taxes he had paid on behalf of Summertime Cafe, Inc., which he had purchased. After stating that Collins could not bring a refund action for the taxes he had paid for Summertime Cafe because he was not the taxpayer, the Court of Claims added that "plaintiff, a nontaxpayer, must establish independent jurisdictional grounds for his action." 532 F.2d at 1347 n.2 (internal citation omitted).

That independent jurisdictional basis, if any, would be an implied-in-fact contract, which would exist if Collins established that he had paid the taxes under duress, as he urged. 532 F.2d at 1348. Duress consists of the following elements: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no

other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Id.* (internal quotation marks omitted). "The coercive acts referred to must be of such a nature that they are sufficient to overpower the free will of the plaintiff and to prevent any other course of action." *Id.* at 1349.

The Court of Claims rejected Collins' contention that an IRS representative's telling him that he might be liable for the corporate taxes if he had sold its assets constituted duress, reasoning that none of the elements of duress were present. First, "there is no evidence of the involuntary acceptance of terms dictated by the Internal Revenue Service." *Id.* at 1348. Second, other alternatives were available, such as the IRS's issuance of a notice of deficiency, and Collins' filing a petition challenging that notice in the Tax Court. Third, the record was "completely devoid of any coercive actions by agents of the Internal Revenue Service. At best the plaintiff has demonstrated only a misrepresentation of law by [the IRS agent]. Where, as here, the plaintiff was represented by tax counsel prior to and at the time of the payment in issue, misrepresentation of law cannot form the basis for a finding of duress." *Id.* at 1349. Therefore, the court held that there was

no implied-in-fact contract over which it could exercise jurisdiction and that Collins could not recover the payment at issue. *Id.* at 1351.

As in *Collins*, Roman did not establish duress. He paid Espinosa's tax liability as a result of his pre-existing contractual obligation to do so. That contract, which was incorporated by the State of Florida into his divorce decree (Appx68-69), states that it was "freely and voluntarily entered" by Roman:

> Each party has had independent legal advice by counsel of his or her selection or has waived same in the negotiation of this Agreement. Each party fully understands the facts and has been informed fully as to his or her rights or obligations. Each is signing the Agreement freely and voluntarily intending to be bound by it.

(Appx64.) And Roman received value in exchange for his agreement to pay. As he has stated (Appx88), he "agreed to pay the approximately $50,000.00 USD on taxes owed on the $150,000.00 in exchange for said house, totaling $200,000.00 USD."

Furthermore, even if an IRS customer service representative told Roman that there was a lien on his home, that was true because of the statutory lien, I.R.C. § 6321(a), arising out of his *own* then-unpaid tax liability. (Appx80.) And if the customer service representative told him that he was obliged to pay his ex-wife's taxes, that also was true,

though under Florida law, not federal law. It was also consistent with the advice he had already received from his own attorney. (Appx27.) Even if the IRS customer service representative had misinformed Roman that he had to pay his ex-wife's taxes in order to prevent a tax lien on his house, that would not constitute coercion. As in *Collins*, any such statement (if it were made) would be "only a misrepresentation of law."

And it would be odd indeed if erroneous advice given by a Government employee that likely could not trigger equitable estoppel against the Government were thought to induce duress. *Cf. OPM v. Richmond*, 496 U.S. 414, 423-34 (1990) (reserving judgment on whether equitable estoppel ever lies against the Government). In this case Roman could not possibly establish reliance on the IRS representative's advice, since the action he claims to have taken based on this advice — the payment of his ex-wife's tax liability — was an action he had already promised to undertake in the property settlement agreement associated with his divorce. (Appx66.) The Florida divorce court had "specifically reserve[d] jurisdiction to enforce the Property Settlement Agreement and the Amendment thereto." (Appx69.) And Roman's own

attorney had already told him that he was obliged to pay the tax. (Appx27.) Indeed, Roman's interaction with the IRS customer service representative was sufficiently inconsequential that Roman did not mention it in his administrative refund claim (Appx93-94), though he did mention his own attorney's allegedly erroneous advice (Appx94).

### D. The Supreme Court decision in *Williams* does not provide a jurisdictional basis for Roman's refund suit with respect to the taxes he paid on behalf of his ex-wife

In *Williams*, the Court held that one who paid another's tax liability could bring a refund suit under 28 U.S.C. § 1346(a) in the circumstances of that case. In *Williams*, taxpayer's then-husband Jerrold Rabin had failed to satisfy tax liabilities that he had incurred. Consequently, the IRS had a lien on his interest in the couple's jointly owned home. When the parties divorced, Williams received Rabin's interest in their home, but did not then have notice of the tax lien. After she entered into a contract to sell the house, the Government gave actual notice to her and the purchaser of the tax liens, which the Government claimed were valid against the property or the sale proceeds. Believing she had no realistic alternative, Williams authorized disbursement of $41,937 from the sale proceeds to the IRS so

that she could convey clear title. She then commenced a refund suit under 28 U.S.C. § 1346(a).

The Supreme Court rejected the Government's argument that Williams was not a "taxpayer," reasoning that "[i]n placing a lien on her home and then accepting her tax payment under protest, the Government surely subjected Williams to a tax, even though she was not the assessed party." 514 U.S. at 535. *See also id.* at 540 ("[B]ecause the house belongs to her rather than to him" she was " 'subject to' the tax in a meaningful and immediate way.") The Court also rejected the Government's argument that Williams lacked standing to bring a refund suit, holding that "Williams' plea to recover a tax 'erroneously . . . collected' falls squarely within" the statutory language of 28 U.S.C. § 1346(a). *Id.* at 532 (internal quotation marks omitted and alteration in original). In so holding, the Court observed that Williams "had no realistic alternative to payment of a tax she did not owe, and we do not believe Congress intended to leave parties in respondent's position without a remedy." *Id.* at 529 (footnote omitted).

In *EC Term of Years Trust v. United States*, 550 U.S. 429 (2007), the Court emphasized the limitations of its holding in *Williams,* noting

that its holding "that § 1346(a)(1) authorizes a tax-refund claim by a third party whose property was subjected to an allegedly wrongful tax lien" was based "on the specific understanding that no other remedy, not even a timely claim under § 7426(a)(1), was open to the plaintiff in that case." *Id.* at 434-35. In *EC Term of Years Trust*, the trust that had been created by taxpayers could have brought a wrongful levy action under I.R.C. § 7426 to recover funds that the IRS had seized from its account to collect taxpayers' federal income taxes. The Court therefore held that the trust, having missed the deadline for challenging a levy under § 7426(a)(1), could not bring the challenge as a tax-refund claim under § 1346(a)(1). *Id.* at 436.

Not only is the *Williams* holding limited, but the facts of this case are distinguishable from *Williams*; in this case, there was no lien on Roman's property attributable to Espinosa's liability, as the CFC correctly observed. (Appx9 n.8.) Thus, *Williams,* which the Supreme Court limited to "a tax-refund claim by a third party whose property was subjected to an allegedly wrongful tax lien," *E.C. Term of Years,* 550 U.S. at 434-35, does not apply here.

Moreover, even in cases where it applies on the facts, *Williams* has been superseded by statute. Three years after the *Williams* decision, Congress provided a remedy independent of 28 U.S.C. § 1346(a)(1) to enable third parties to contest lien-related collections by the IRS. The Senate Report, after citing *Williams*, explained that "third parties should have a mechanism to release an erroneous tax lien" and that "[a]ccordingly, the Committee believes it is appropriate to provide relief similar to that provided to third parties who are subject to wrongful levy of property." S. Rep. No. 105-174, 2d Sess., at 54 (1998). In the IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685, § 3106, Congress added I.R.C. §§ 6325(b)(4) and 7426(a)(4) to the Code. Under § 6325(b)(4)(A), a third party has the right to obtain a certificate of discharge by applying to the IRS for such a certificate after either depositing cash or furnishing a bond sufficient to protect the lien interest of the United States. Section 7426(a)(4) provides a judicial remedy to resolve disagreements between the Service and third parties about the value of the tax lien and whether the tax lien attaches to the subject property. Section 7426(a)(4) also provides

that "[n]o other action may be brought by such person for such a determination."

Courts, including the CFC, have held that those provisions (and not refund suits) are the exclusive avenue for a third party to contest an allegedly wrongful IRS tax lien. *See Munaco v. United States*, 522 F.3d 651, 655-57 (6th Cir. 2008); *Four Rivers Investments, Inc. v. United States*, 77 Fed. Cl. 592, 602-03 (2007), *aff'd without op.*, 330 F. App'x. 919 (Fed. Cir. 2009); *City of Richmond v. United States*, 348 F. Supp. 2d 807, 812-14 (E.D. Ky. 2004). *See also* Rev. Rul. 2005-50, 2005-2 C.B. 124 ("[i]n light of amendments to sections 6325 and 7426 of the Code made by the IRS Restructuring and Reform Act of 1998, a person not liable for an underlying tax may not file a refund action under the holding of *United States v. Williams* . . . ").

Thus, *Williams* does not provide a jurisdictional basis for Roman to recover the payments he made of his ex-wife's tax liability.

### E. As a volunteer, Roman may not to sue to recover taxes paid on behalf of another

As the Supreme Court observed in *Williams*, the statutory provision now codified at 28 U.S.C. § 1346(a)(1) "mirrors the broad common-law remedy the statute displaced: actions of assumpsit for

money had and received." 514 U.S. at 532. As the Court noted, however, "[a]ssumpsit refund actions were unavailable to volunteers." *Id.* (citing *Philadelphia v. Collector*, 5 Wall. 720, 731-732 (1867). This limit was not material to Williams's case, because she paid under "duress of a lien." 514 U.S. at 540. Although Roman paid pursuant to an obligation assumed under a private contract, he was a volunteer from the point of view of the tax law. He therefore cannot bring this refund claim.

The distinction between plaintiffs who pay tax under a form of duress created by the Government and those who pay pursuant to a private contract is illustrated by two cases addressing similar New Deal taxes. In *Stahmann v. Vidal*, 305 U.S. 61 (1938), relied upon by the Court in *Williams*, 514 U.S. at 539, the Court confronted a Bankhead Act tax intended "to restrict the production of cotton and, to that end, to levy a heavy tax in respect of that produced in excess of the farmer's quota." 305 U.S. at 65. The statutory mechanism, however, technically imposed the tax on the ginner. *Id.* at 64-65. But the design of the tax was unusual: the Court said it "sets the case apart from any to which our attention has been called under other taxing acts." *Id.* at 65.

Under this design, the cotton was rendered "immobil[e]" and "unusable" until the tax was paid. *Id.* Thus, the Court held that the farmer who paid the ginner's tax "under duress of goods" was not a volunteer and could sue for a refund. *Id.* at 66.

In the case *Zinsmaster Baking Co. v. Commissioner*, 109 F.2d 738 (8th Cir. 1940), the Eighth Circuit confronted a similar tax, wherein a tax was imposed on flour in the hand of the processor of wheat. In *Zinsmaster Baking*, the bakers who purchased flour from the taxpayer had agreed, by private contract, to pay whatever tax was assessed by the Government. *Id.* at 738. The court found this situation distinguishable from *Stahmann*. *Id.* at 740. The baker in *Zinsmaster Baking*, the court held, merely "paid to its vendor amounts which it agreed to pay in its purchase contracts." *Id.*

Unlike the tax in *Stahmann*, which placed the cotton under duress of goods, Roman's obligation to pay his ex-wife's tax did not arise from Congress's design of the tax statute. Nor did it arise from the filing of a notice of federal tax lien against a property no longer held by the taxpayer, like the tax in *Williams*. Instead, like the baker in

*Zinsmaster Baking*, Roman's payment obligation arose from a private contract.

To be sure, in *Zinsmaster Baking*, the baker paid the flour producer, who paid the Government. But as the Court of Claims held long ago, a payment is no less voluntary for being made directly to the Government. In *Central Aguirre Sugar Co. v. United States*, 2 F. Supp. 538, 543 (Ct. Cl. 1933), a company that had succeeded in interest to an association contended that it could challenge a tax it had paid on behalf of the association, because "the amount 'was the tax of another taxpayer . . . and was illegally assessed against us and collected from us.' " *Id.*

The Court of Claims held that "[t]he mere fact that the company . . . had succeeded to the assets of the association and assumed its liabilities, does not make the payment by it compulsory" rather than voluntary. *Id.* at 544. Rather, the court held, the company "sent its check in payment of the liability" "voluntarily and of its own free will and accord." Because the payment had been voluntarily made, albeit in service of the company's freely-undertaken legal obligation to assume the association's liabilities, the court held that no recovery was available. *Id.* So too here; Roman sent the checks to the IRS in

payment of his ex-wife's liability in service of his own, freely-undertaken legal obligation to do so. Thus, as in *Central Aguirre Sugar*, no recovery is available.

## III

### The CFC also erred in ordering a refund without permitting the United States to respond to the complaint and litigate the merits and in ordering a refund of monies paid more than two years before the administrative refund claim was filed

The CFC also erred in *sua sponte* granting the requested refund after denying the Government's motion to dismiss for lack of jurisdiction. The Government never conceded that Roman was entitled to a refund if its jurisdictional motion was denied. Indeed, the Government had not even answered the complaint.

Moreover, the Government's motion to dismiss for lack of jurisdiction contained the alternative argument that "the complaint fails to state a claim for refund of plaintiff's 2010 income tax because he did not make any payments during the two-year look-back period under Internal Revenue Code § 6511(b)(2)(B)." (Doc. 19 at 20.) Under I.R.C. § 6511(b)(2)(B), if the claim for refund is not filed within three years of the tax return, the amount of the refund is limited to "the portion of the

tax paid during the 2 years immediately preceding the filing of the claim."

Strangely, the CFC accepted this argument in dismissing plaintiff's claim for a refund of his own taxes (Appx11), but it failed to apply the look-back statute to the claim for a refund of Espinosa's taxes. But a plaintiff may not rely on 28 U.S.C. § 1491(a) to circumvent the limitations of the statutory refund scheme codified in I.R.C. §§ 7422(a) and 6511. *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 9 (2008).

Thus, even if the CFC was correct to uphold its jurisdiction, it should have held the case for further proceedings addressing the merits of Roman's claim. It should have allowed the Government to answer the complaint. *See* RCFC 12(a)(4)(A) (after the denial of a motion, a responsive pleading must be served by the later of 14 days after notice of the court's action or the date the responsive pleading otherwise would have been due). The court then should have left the case open for further proceedings, such as summary judgment motions or trial on the merits. And even if a refund had been ordered, it should have been

limited to the amount paid within the statutory two-year lookback period.

## CONCLUSION

The CFC's judgment should be reversed, and the complaint should be dismissed for lack of jurisdiction. In the alternative, the judgment ordering the Government to pay a refund to Roman should be vacated, and the case should be remanded for further proceedings.

Respectfully submitted,

DAVID A. HUBBERT
*Deputy Assistant Attorney General*

/s/ Bethany B. Hauser

JOAN I. OPPENHEIMER (202) 514-2954
BETHANY B. HAUSER (202) 514-2830
*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

JANUARY 24, 2022

# In the United States Court of Federal Claims

**No. 20-40 T**
**Filed: August 2, 2021**

**JUAN ROMAN**

**v.**

**THE UNITED STATES**

**JUDGMENT**

Pursuant to the court's Opinion, filed August 2, 2021, denying defendant's motion to dismiss plaintiff's third-party refund claim, and granting defendant's motion to dismiss plaintiff's personal refund claim as well as the remaining claims for wrongful collection, tort, criminal misconduct, and due process violations,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff recover of and from the United States the amount of $50,002.04, and plaintiff's personal refund claim as well as the remaining claims for wrongful collection, tort, criminal misconduct, and due process violations are dismissed. No costs.

Lisa L. Reyes
Clerk of Court

By: *Debra L. Samler*

Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 20-40T
Filed: August 2, 2021

| |
|---|
| **JUAN ROMAN, pro se,** |
| ***Plaintiff,*** |
| **v.** |
| **UNITED STATES,** |
| ***Defendant.*** |

*Juan Roman*, proceeding *pro se*.

*Elizabeth Ann Kanyer,* Trial Attorney, United States Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C. for defendant.

## OPINION

**FUTEY**, *Senior Judge*

This action for a tax refund is before the Court on the Complaint filed by *pro se* plaintiff, Juan Roman, against the United States Internal Revenue Service (IRS). Plaintiff alleges that he is entitled to a refund because he paid his ex-wife's (Ms. Espinosa's) personal income taxes by mistake. The alleged mistake is two-dimensional. First, he alleges that the IRS wrongfully assessed the tax because it should have been excluded from taxable income under I.R.C. § 121 as money gained from the exchange of property.[1] Second, he alleges that the IRS officer he consulted incorrectly warned that if he did not pay Ms. Espinosa's tax liability, his property would be levied.

In 2009, Plaintiff and Ms. Espinosa entered into a property settlement agreement as part of the dissolution of their marriage. In exchange for $150,000, which Plaintiff withdrew from an IRA retirement account, Ms. Espinosa transferred to Plaintiff her interest in the home they shared. In a subsequent amendment to their settlement agreement, Plaintiff agreed to pay any taxes owed on the $150,000. Plaintiff's Complaint explains that he made this agreement after receiving bad legal advice from his divorce lawyer, who should have advised that the funds would be exempt under I.R.C. § 121.

[1] I.R.C. § 121(a) provides: "Gross income shall not include gain from the sale or exchange of property if, during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more."

In 2011, Ms. Espinosa reported the $150,000 payment as income for the 2010 tax year. The IRS assessed approximately $50,000 in taxes against her and mailed a notice of intent to levy to her at her new address in Kissimmee, Florida. A few days later, Plaintiff and Ms. Espinosa visited the local IRS office to consult an agent about the notice. Plaintiff explained to the IRS officer on duty, Maria Suescun, that he believed the taxes were wrongfully assessed against Ms. Espinosa due to I.R.C. § 121. He asked if the notice indicated that the IRS had placed a lien on his home, formerly their shared property, and explained that Ms. Espinosa no longer had interest in the property due to their divorce agreement. Officer Suescun responded that Ms. Espinosa's tax liability would have to be paid to stop a levy against his home. Officer Suescun drew up an installment agreement for Ms. Espinosa's income tax liability. The document listed Ms. Espinosa as the taxpayer using her former married name, Gudelia I. Roman, her former address (Plaintiff's residence), Plaintiff's checking account, and Plaintiff's financial institution.

Plaintiff did not sign the agreement, but he wrote two personal checks for the down payment and the user fee noting "for Iris Espinosa" on the checks. He asserts that he paid the taxes under protest to prevent his home from being levied. Pursuant to the installment agreement, Plaintiff sent monthly payments from his personal checking account to the IRS until March 4, 2019. Ms. Espinosa's tax obligation was satisfied two years earlier, on March 8, 2017, but the IRS sent receipts for Plaintiff's payments to Ms. Espinosa at her new address; the IRS also sent refunds for Plaintiff's overpayments to Ms. Espinosa.

In 2018, Plaintiff filed an administrative refund claim asserting that, under I.R.C. § 121, the IRS should not have assessed income taxes against Ms. Espinosa, which he paid on her behalf. In the Complaint filed January 13, 2020, he asserts that even though he was not the assessed taxpayer, he has standing to contest Ms. Espinosa's tax liability under 28 U.S.C. § 1346 (a)(1) because the IRS collected it from him.[2] In addition, he alleges that *United States v. Williams*, 514 U.S. 527 (1995), provides him standing to contest a third-party tax refund because an IRS officer told him that he had to pay Ms. Espinosa's tax liability to stop a levy against his home. Plaintiff also seeks a refund of his personal tax liability for the penalty assessed on his early IRA distribution of $32,157, which he asserts was withdrawn to pay Ms. Espinosa's taxes. In addition, he raises claims of unauthorized IRS collection action, tort, contract, criminal misconduct, and due process violations.

On October 14, 2020, the Government filed the corrected motion to dismiss. Plaintiff responded to the Government's motion on February 8, 2021, and the Government replied on March 22, 2021. Plaintiff filed a sur-reply on April 26, 2021.

---

[2] 28 U.S.C. § 1346 (a)(1) provides: The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

The Government asserts that this Court lacks subject-matter jurisdiction over Plaintiff's personal refund action and third-party refund action because they substantially vary from Plaintiff's administrative refund claim. Additionally, the Government contends that the Court lacks jurisdiction to consider a third-party refund suit to challenge a lien under *Williams* because the case was superseded by statute. As to Plaintiff's personal refund claim, in the alternative, the Government submits that the Complaint fails to state a claim upon which relief can be granted because Plaintiff did not file an administrative refund claim within the limitation period prescribed in I.R.C. § 6511. Finally, the Government asserts that Plaintiff's claims of unauthorized IRS collection actions, claims sounding in tort, contract, criminal misconduct, and due process violations are not cognizable under the Tucker Act, and, therefore, are outside this Court's jurisdiction.

The matter is now ripe for disposition.

## I. BACKGROUND

### a. Property Settlement Agreement

On December 18, 2009, Plaintiff, Juan Roman, and his ex-wife, Iris Gabriela Espinosa, formerly Gudelia I. Roman, entered into a property settlement agreement as part of the dissolution of their marriage. Plaintiff and Ms. Espinosa owned, as tenants by the entirety, real property in Miami-Dade County, Florida, (Biscayne Park residence) which was their shared primary residence. Pursuant to their agreement, plaintiff agreed to pay Ms. Espinosa $150,000 in exchange for her execution of a quitclaim deed conveying her interest in the Biscayne Park residence to him. On December 22, 2009, Ms. Espinosa executed the quitclaim deed, giving Plaintiff "all the right, title, interest, claim and demand which [Ms. Espinosa] has in and to" the Biscayne Park residence. The Miami-Dade County Clerk of the Courts recorded the quitclaim deed on January 27, 2010.

On January 22, 2010, Plaintiff and Ms. Espinosa amended the property settlement agreement to provide that Plaintiff would pay any tax owed on his $150,000 payment to Ms. Espinosa so that she would net $150,000. On February 5, 2010, the court entered a final judgment of dissolution of marriage. The court incorporated the property settlement agreement and the amendment to the property settlement agreement in the final judgment. According to the final judgment, the property settlement agreement and amendment were "freely entered into by the parties after a full disclosure and [was] in the best interest of the parties." The February 5, 2010 judgment restored Ms. Espinosa's name to Iris Gabriela Espinosa.

In August 2010, Plaintiff transferred approximately $150,000 from his IRA to Ms. Espinosa's checking account. On April 11, 2011, Investment Financial Corporation sent a Form 1099-R ("Distributions from Pensions, Annuity, Retirement, or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.") noting a gross distribution to Ms. Espinosa's "Rollover Account" of $149,952 and reporting the entire amount as taxable. The statement was addressed to Gudelia I. Roman, her married name, and mailed to the Biscayne Park residence.

**b. Plaintiff's Tax Liability**

In 2011, Plaintiff filed a separate personal income tax return for the tax year 2010 reporting that he withdrew $395,707 from his Individual Retirement Account (IRA) and that $166,044 was taxable. The return reported tax due of $62,604, which the IRS assessed on May 16, 2011, along with a late payment penalty of $368 and interest of $125. On May 16, 2011, the IRS assessed tax in the amount of $62,604, and thereby placed a lien in the assessed amount on all of Plaintiff's property.[3] The Complaint alleges that $32,157 was an early withdrawal penalty tax on the IRA distribution.

On August 1, 2011, the IRS sent Plaintiff a statutory notice of intent to seize property for $37,983 in still unpaid tax liability.[4] On August 9, 2011, Plaintiff made a $12,885 payment and agreed to make monthly payments of $417 under an installment agreement. Plaintiff fully paid the account balance for tax year 2010 on or around July 15, 2014. Plaintiff overpaid his balance, and the IRS issued refunds to Plaintiff of $1,684 and $417 in 2014 and 2018, respectively.

**c. Ms. Espinosa's Tax Liability**

On April 15, 2011, Ms. Espinosa filed a separate personal income tax return for the tax year 2010 reporting adjusted gross income of $163,103 and taxable income in the amount of $147,403. On May 30, 2011, the IRS assessed tax in the amount of $48,416, and thereby placed a lien in the assessed amount on all of Ms. Espinosa's property. The notice was addressed to Gudelia I. Roman in Kissimmee, FL.

On August 8, 2011, the IRS issued a notice of intent to levy and seize property for Ms. Espinosa's unpaid tax liability. The notice, providing that she owed $50,002.04 in unpaid taxes and penalties, was addressed to Gudelia I. Roman in Kissimmee, FL.[5]

On August 18, 2011, Plaintiff and Ms. Espinosa visited the local IRS office to determine whether Plaintiff was responsible for paying Ms. Espinosa's tax liability. Plaintiff explained to the IRS officer, Maria Suescun, that he had paid $150,000 to his wife in exchange for her execution of a quitclaim deed for her interest of their home, and he believed income taxes should not have been assessed on the payment due to I.R.C. § 121. Plaintiff asked if the notice to Ms. Espinosa indicated that the IRS had placed a lien on his home, even though Ms. Espinosa no longer had ownership rights in the property. After consulting with a supervisor, Officer Suescun responded that Ms. Espinosa's tax liability would have to be paid to stop a levy against Plaintiff's home.

---

[3] *See* 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.").

[4] The IRS withheld $25,798 in tax according to Plaintiff's 2010 Tax Record.

[5] The amount owed as of August 18, 2011 included $968.32 in late payment penalty fees and $617.72 in interest.

Officer Suescun subsequently drew up an installment agreement for Ms. Espinosa's tax liability. The document listed Ms. Espinosa as the taxpayer using her former married name, Gudelia I. Roman, her former address (Plaintiff's residence), Plaintiff's checking account, and Plaintiff's financial institution. Agent Suescun told Plaintiff he would have to make the $25,010 down payment to stop the levy and monthly installment payments of $417 excluding interest and penalties. Plaintiff did not sign the agreement; he asserts that he made the down payment and monthly installment payments thereafter under protest.

Pursuant to the installment agreement, Plaintiff sent monthly payments to the IRS until March 4, 2019. Plaintiff wrote "for Gudelia I. Roman" on these checks. Ms. Espinosa's tax obligation was satisfied two years earlier, on March 8, 2017, but the IRS sent receipts for his payments to Ms. Espinosa at her new address. The IRS also sent $13,049.96 in refunds of Plaintiff's overpayments to Ms. Espinosa. According to Plaintiff, Ms. Espinosa refused to let him know about the receipts she received from the IRS or to return the excess funds to him.

**d. Plaintiff's Administrative Refund Claim**

On May 9, 2018, Plaintiff filed an amended personal tax return, or refund claim, to recover his payments on Ms. Espinosa's 2010 tax liability. Plaintiff asserted that tax on the $150,000 payment to Ms. Espinosa was wrongly assessed because the property transfer fell under I.R.C. § 121 – exclusions of gain from the sale of a principal residence. In the refund claim, Plaintiff did not assert reliance on *United States v. Williams*, 514 U.S. 527 (1995), and did not mention an allegedly wrongful lien on his property.

The IRS disallowed Plaintiff's refund claim on August 17, 2018. The IRS explained that Plaintiff filed the claim more than three years after the date of filing on his tax return and more than two years after he satisfied his personal income tax liability.[6] The IRS notified Plaintiff that he could contest the decision by filing suit in the United States District Court having jurisdiction or the United States Court of Federal Claims within two years from the date of the denial of his administrative refund claim.

**e. Plaintiff's Refund Suit**

On January 13, 2020, Plaintiff filed this refund suit asserting (1) a claim for a refund of his own taxes for tax year 2010; and (2) a third-party refund claim to recover his payments on Ms. Espinosa's tax liability, based on 28 U.S.C. § 1346(a) and *Williams*. The Complaint also raises

[6] Plaintiff could not have filed an administrative refund claim using Ms. Espinosa's personal tax return. While his final payment on the installment agreement for his own tax liability was in 2014, nearly four years before he filed the refund claim, Plaintiff was *still* paying for Ms. Espinosa's tax liability under the installment agreement listing "Gudelia I. Roman" as the taxpayer with Plaintiff's address. Ms. Espinosa's tax liability was satisfied on March 8, 2017, less than two years before he filed the administrative refund claim. Therefore, the administrative refund claim for Ms. Espinosa's tax liability was timely filed.

claims of unauthorized IRS collection actions, claims sounding in tort, contract, criminal misconduct, and due process violations.

## II. DISCUSSION

### a. Legal Standards

#### i. *Pro Se* Litigants

Because Plaintiff is proceeding *pro se* in this matter, he is "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers."). Accordingly, the Court has examined the Complaint and briefing with this less rigorous standard in mind.

#### ii. Subject Matter Jurisdiction, RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir. 1988). However, the plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

The United States Court of Federal Claims is a court of limited jurisdiction. *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 n.2 (Fed. Cir. 1998). The Tucker Act grants the Court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.... [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation, or an express or implied contract with the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008). Furthermore, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

#### iii. Failure to State a Claim, RCFC 12(b)(6)

A complaint that withstands jurisdictional scrutiny is still subject to RCFC 12(b)(6), which governs dismissal of complaints for failure to state a claim upon which relief can be granted.

Dismissal on this basis "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). To survive a motion to dismiss, a plaintiff must include in the complaint "sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. The court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797; *see also Rocky Mountain Helium v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (discussing documents considered part of the pleadings). However, such deference extends only to factual allegations, not to legal conclusions. *Twombly*, 550 U.S. at 555.

**iv. Tax Refund Suits**

The Tucker Act, 28 U.S.C. § 1491(a)(1), grants this Court jurisdiction over tax refund claims. *See, e.g., United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008); *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002). Before bringing a refund suit, a plaintiff must first abide by the "full payment rule," which requires that a taxpayer fully pay the federal income tax assessment at issue before bringing a refund suit in this Court or a district court. *Flora v. United States,* 357 U.S. 63, 72–73 (1958), *aff'd on reh'g*, 362 U.S. 145. Second, a plaintiff must timely file a tax refund claim with the IRS. *See* I.R.C. § 7422(a) ("[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary, according to ... the regulations of the Secretary [of the Treasury] established in pursuance thereof."). Third, the plaintiff must provide the amount, date, and place of each payment to be refunded, as well as a copy of the refund claim when filing suit in this Court. RCFC 9(m).

**b. Analysis**

**i. Plaintiff's Third-Party Refund Claim**

Plaintiff seeks a refund of monies he paid to the IRS in satisfaction of his ex-wife's tax liability because he asserts that they were not legally owed. Specifically, he argues in both his administrative refund and the Complaint that Ms. Espinosa's 2010 income of $150,000 should have been excluded from tax under I.R.C. § 121 because she received the funds in exchange for her interest in their primary residence as part of their divorce settlement.[7]

---

[7] The refund amount Plaintiff seeks is approximately $50,002.04, which includes $48,416 in income taxes plus penalties and interest paid. All of Plaintiff's payments to the IRS are documented in Defendant's Exhibit 2.

Plaintiff asserts that on August 18, 2011, an IRS officer, Maria Suescun, told him that his property had a lien attached due to Ms. Espinosa's tax liability and that it would be subject to a levy if he did not pay the taxes. Officer Suescun drew up an installment agreement listing Ms. Espinosa as the taxpayer but otherwise used all of Plaintiff's personal information, including his address (formerly their shared primary residence), employer, financial institution, and checking account number. The "additional conditions" box on the Form 433-D notes that "TP ex-spouse with POA made a payment for $25,010.00 today bringing bal due to under $25,000 to request Streamline IA." Plaintiff recounts that Officer Suescun told him that an installment agreement would remove the lien and that he could appeal when the taxes were fully paid.[8] Plaintiff alleges he had "no realistic alternative to payment of [this] tax that he did not owe."

On March 4, 2019, Plaintiff sent his final monthly payment on Ms. Espinosa's tax liability to the IRS. Ms. Espinosa's tax liability was satisfied on March 8, 2017, but he asserts that he continued making payments for two more years because the IRS sent all the receipts for his payments to Ms. Espinosa, who did not inform him when the tax obligation was satisfied. The IRS sent refunds for Plaintiff's overpayments to Ms. Espinosa.

On May 9, 2018, Plaintiff filed an administrative refund claim to recover his payments on Ms. Espinosa's tax liability using his personal income tax return. *See* Exhibit 9. The IRS denied Plaintiff's request as untimely, apparently treating the submission as a refund request for his personal income tax liability, not a refund request for his payments on Ms. Espinosa's personal income tax liability.

The Government argues that this refund claim should be dismissed for four reasons: (1) the Complaint's basis for relief, *Williams*, substantially varies from the ground raised by Plaintiff in his refund claim; (2) *Williams* is no longer available for a third-party challenge of an allegedly wrongful tax lien because Congress has since provided a statutory remedy; (3) I.R.C. § 7426(a)(1) provides the exclusive remedy for third parties to contest a wrongful levy; and (4) third parties cannot contest the substantive tax liability of another.

Some of the grounds for dismissal presented by the Government apply to taxpayers and others to third-party property owners. Thus, it is necessary to establish which of these might apply to Plaintiff's position. 26 U.S.C. § 7701(a)(14) defines "taxpayer" as "any person subject to any internal revenue tax." In the context of refund claims, this Court has construed the term "taxpayer" in a "strict or narrow sense … [;] mean[ing] a person who pays, overpays, or is subject to pay his own personal income tax." *Econ. Plumbing & Heating Co. v. United States*, 470 F.2d 585, 590 n.3 (Ct. Cl. 1972). In *Collins v. United States*, this Court held that "in order to maintain an action for the refund of taxes…, the plaintiff must be the taxpayer who has overpaid his own taxes." 532 F.2d 1344, 1347 n.2 (Ct. Cl. 1976). However, there were no claims that the amounts paid were not actually due from the assessed taxpayers in either of those cases. For this reason, the Court concluded that "the plaintiff, a nontaxpayer, [had to] establish independent jurisdictional grounds

[8] A federal tax lien would have attached to their formerly shared Biscayne Park residence only through Plaintiff's own tax liability because Ms. Espinosa no longer had any property rights in the home as of the date of the assessment against her, May 30, 2011.

for his action." *Id*. Here, Plaintiff *does* claim that the amount paid was not actually due; that is his basis for requesting a refund, not overpayment. Therefore, Plaintiff is in the category of taxpayer.

Likewise, Plaintiff cannot be considered a third-party property owner challenging an allegedly wrongful tax lien because the IRS did not actually place a lien on *his* property to challenge.[9] There are no documents showing that the IRS intended to seize Plaintiff's property on account of Ms. Espinosa's personal income tax obligation and the IRS did not issue a certificate of discharge of a lien to Plaintiff after he paid the tax assessed against her.

Here, the essence of both Plaintiff's Complaint and his administrative refund claim is that the income tax was not legally owed by Ms. Espinosa due to I.R.C. § 121. As the Complaint avers, this Court has jurisdiction over refund actions for "the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected" under 28 U.S.C. § 1346 (a)(1). The Government, in its motion, does not address the merits of Plaintiff's claim that Ms. Espinosa's income should have been excluded from tax under I.R.C. § 121. The applicable statute of limitations would therefore be prescribed in 28 U.S.C. § 2501, which bars claims filed more than six years after such claim first accrues. As previously mentioned, the full payment rule requires that a taxpayer fully pay the federal income tax assessment at issue before bringing a refund suit in this Court or a district court. In addition, the plaintiff must timely file a refund claim with the IRS according to Treasury regulations. Finally, the plaintiff must provide the amount, date, and place of each payment to be refunded, as well as a copy of the refund claim. Plaintiff has satisfied these requirements: he filed a refund claim on May 9, 2018 with the IRS, approximately fourteen months after completing payments on Ms. Espinosa's tax liability. 26 U.S.C. § 6511(a) requires that a taxpayer file a refund claim within two years from the time the tax was paid. He then filed suit in this Court on January 13, 2020, well within the six-year period. Plaintiff has provided the amounts, date, and place of the payments to be refunded, and a copy of the refund claim.

**ii. Plaintiff's Personal Refund Claim**

Plaintiff next asserts entitlement to a refund of the penalty he paid for an early IRA distribution to pay the $25,000 down payment and $105 user fee on the installment agreement for Ms. Espinosa's tax liability.[10] He contends that the "$32,157 [early IRA distribution penalty] and

---

[9] While Plaintiff believed his payments would discharge a lien on his property, based on Officer Suescun's statement, there was no lien on his property to discharge. Had there been a lien to discharge against his property, Plaintiff would have had to follow the procedures set forth in the Internal Revenue Service Restructuring & Reform Act of 1998 (IRRA), which added I.R.C. §§ 7426(a)(4) and 6325(b)(4) to the Code. Pub.L. No. 105–206, § 3106, 112 Stat. 732, 732–34. Plaintiff would have received a certificate of discharge from the IRS after paying the deposit, but no such certificate was issued to him. Instead, the IRS entered an installment agreement with Plaintiff, treating him as the taxpayer.

[10] In the section entitled "Mr. Roman's Personal Tax Refund Claim" in Plaintiff's response to the motion to dismiss, he writes "Mr. Roman's refund Complaint is not about his separate 2010

his overpayment of [Ms. Espinosa's] tax liability in the amount of $13,049.96 constitutes damages" for which he should be compensated.

The Government argues that the claim should be dismissed for lack of jurisdiction due to the substantial variance doctrine; alternatively, the Government argues that the claim should be dismissed for failure to state a claim because Plaintiff did not make any payments during the two-year look-back period required under I.R.C. § 6511(b)(2)(B).

Using his personal income tax return, Plaintiff filed an administrative refund claim for tax year 2010 on May 9, 2018. He filed the original return for tax year 2010 on April 15, 2011 and completed payments on his personal income tax liability for 2010 on August 11, 2014.[11] Section 6511(a) sets forth the period of limitation on filing a refund claim:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a). Plaintiff's installment agreement terminated on August 11, 2014, and he did not file a refund claim until nearly four years later. Section 6511(b)(2)(B) further specifies that refund amounts are limited on claims not filed within the three-year period to the portion of the tax paid during the two years immediately preceding the filing of the claim. Therefore, since Plaintiff did not make any payments on his personal income tax obligation during the look-back period, the claim is subject to dismissal.

**iii. Remaining Claims**

Plaintiff's Complaint raises additional claims for relief – wrongful collection, tort, criminal misconduct, and due process violations – over which this Court lacks subject matter jurisdiction. These claims are not cognizable under the Tucker Act, which prescribes the jurisdictional parameters of the United States Court of Federal Claims, for the following reasons.

First, the Complaint alleges an I.R.C. § 7433 wrongful collection claim in the request for damages. Plaintiff alleges that the IRS officer's "actions related to the [installment agreement] contract" were wrongful because Plaintiff should not have been required to sign it. The Complaint seeks damages in the amount of $1,000,000 plus a return of the early withdrawal penalty assessed against his IRA to pay Ms. Espinosa's tax liability in the amount of $32,156.32. This Court does not have jurisdiction over the wrongful collection claim under I.R.C. § 7433.

---

tax refund…. The point is that the early IRA distribution was related to Roman's protested payment of Ms. Espinosa's tax liability."

[11] Plaintiff made the final payment on his personal income tax liability for tax year 2010 under an installment agreement on July 15, 2014. The installment agreement was terminated on August 11, 2014.

Congress has given federal district courts exclusive jurisdiction over claims for damages arising from unauthorized IRS collection actions. Section 7433 provides:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS] recklessly or intentionally, or by reason of negligence, disregards any provision of [Title 26 of the Code], such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. § 7433. A wrongful collection action must be brought in federal district court. *Ledford v. United States*, 297 F.3d 1378, 1382 (affirming dismissal of a plaintiff's damages claim based on IRS collection activities as outside of the Court's subject matter jurisdiction). The United States Court of Federal Claims is not a federal district court, and therefore, does not have jurisdiction over this action.[12]

Second, Plaintiff's claims of negligence against IRS Officer Suescun and the IRS are tort claims. This Court lacks jurisdiction to review tort claims. 28 U.S.C. § 1491(a)(1); *see also Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims"); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction [over] claims sounding in tort."). Therefore, this Court does not have jurisdiction over Plaintiff's negligence claims.

Third, Plaintiff's claims alleging that the IRS officer engaged in "illegal and erroneous" actions are criminal in nature. This Court has no authority to adjudicate criminal claims against the federal government or its agents. *Joshua v. United States*, 17 F.3d 378, 379–80 (Fed. Cir. 1994). Thus, this Court cannot consider Plaintiff's criminal allegations against the IRS or its agent.

Fourth, Plaintiff alleges a violation of his rights pursuant to the Due Process Clauses of the U.S. Constitution. In the Complaint, he asserts that his due process rights were violated because he "was not given an opportunity for a hearing before he was required to make these [tax] payments." This Court does not have jurisdiction to consider due process violation claims because they do not obligate the payment of money. *Kenyon v. United States*, 127 Fed. Cl. 767, 773 (2016), *aff'd*, 683 F. App'x 945 (Fed. Cir. 2017); *Bailey v. United States*, No. 15-09C, 2015 WL 4505915, at *3 (Fed. Cl. July 23, 2015) (stating that due process claims are not considered to be money-

---

[12] The Court notes that a civil action for tax refund is not the equivalent of a wrongful collection action for damages based on IRS collection activities. As previously mentioned, this Court has concurrent jurisdiction with federal district courts over civil actions for the recovery of internal-revenue tax alleged to have been erroneously or illegally assessed or collected. 28 U.S.C. § 1346(a)(1). District courts have exclusive jurisdiction over civil actions for damages in connection with the collection of a federal tax. 26 U.S.C. § 7433.

mandating because they are outside of the scope of the jurisdiction granted to the Court of Federal Claims by the Tucker Act). Thus, the Court cannot consider Plaintiff's due process claims.

Finally, the Court has decided Plaintiff's third-party claim for taxpayer relief as a tax refund suit arising under 28 U.S.C. § 1346 (a)(1). Therefore, Plaintiff's allegation of a contract claim requires no consideration.

## III. CONCLUSION

For the above stated reasons, the following is hereby ordered:

1. Plaintiff's Third-Party Refund Claim in the amount of $50,002.04 is **GRANTED**.

2. Defendant's motion to dismiss Plaintiff's Third-Party Refund Claim is **DENIED**.

3. Defendant's motion to dismiss Plaintiff's Personal Refund Claim in Section ii and the Remaining Claims for wrongful collection, tort, criminal misconduct, and due process violations in Section iii is **GRANTED**.

The Clerk is directed to enter judgment accordingly. No costs.

It is so **ORDERED**.

s/ Bohdan A. Futey

**Bohdan A. Futey**
**Senior Judge**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 22-1015

**Short Case Caption** Roman v. United States

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 01/24/2022

by ☑ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☐ Other: ____________

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Juan Roman | 05601-104, Federal Medical Center<br>P.O. Box 1600, Butner, NC 27509 |
| | |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 01/24/2022

Signature: /s/ Bethany B. Hauser

Name: Bethany B. Hauser

FORM 19. Certificate of Compliance With Rule 32(a) Form 19
Rev. 12/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a) or Federal Rule of Federal Circuit Rule 28.1.

☒ This brief contains [*state the number of*] 7,926 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), or

☐ This brief uses a monospaced typeface and contains [*state the number of*] ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒ This brief has been prepared in a proportionally spaced typeface using

[*state name and version of word processing program*] Word for Microsoft 365 in

[*state font size and name of type style*] Century Schoolbook 14 , or

☐ This brief has been prepared in a monospaced typeface using

[*state name and version of word processing program*] ______ with

[*state number of characters per inch and name of type style*] ______ .

/s/ Bethany B. Hauser

(Signature of Attorney)

Bethany B. Hauser

(Name of Attorney)

Appellant

(State whether representing appellant, appellee, etc.)

Jan 24, 2022

(Date)

Reset Fields